# Exhibit A

# PATENT ASSIGNMENT COVER SHEET



Electronic Version v1.1
Stylesheet Version v1.2

Assignment ID: PATI919609

| | |
|---|---|
| **SUBMISSION TYPE:** | NEW ASSIGNMENT |
| **NATURE OF CONVEYANCE:** | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| Anon-X, Inc. | 03/18/2025 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| **Company Name:** | Knossos Global Systems LLC |
| **Street Address:** | 5900 Balcones Drive, Suite 100 |
| **City:** | Austin |
| **State/Country:** | TEXAS |
| **Postal Code:** | 78731 |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number |
|---|---|
| **Patent Number:** | 8819410 |
| **Patent Number:** | 8266421 |

**CORRESPONDENCE DATA**

**Fax Number:**

***Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.***

**Phone:** (302)486-3402
**Email:** jpicini@devlinlawfirm.com
**Correspondent Name:** Jennifer Picini
**Address Line 1:** 1526 Gilpin Ave.
**Address Line 4:** Wilmington, DELAWARE 19806

| | |
|---|---|
| **NAME OF SUBMITTER:** | JENNIFER PICINI |
| **SIGNATURE:** | /JENNIFER PICINI/ |
| **DATE SIGNED:** | 03/28/2025 |

**Total Attachments: 9**
source=Anon-X PSA - Fully Executed#page1.tiff
source=Anon-X PSA - Fully Executed#page2.tiff
source=Anon-X PSA - Fully Executed#page3.tiff
source=Anon-X PSA - Fully Executed#page4.tiff
source=Anon-X PSA - Fully Executed#page5.tiff
source=Anon-X PSA - Fully Executed#page6.tiff

source=Anon-X PSA - Fully Executed#page7.tiff
source=Anon-X PSA - Fully Executed#page8.tiff
source=Anon-X PSA - Fully Executed#page9.tiff

# PATENT ASSIGNMENT AGREEMENT

THIS PATENT ASSIGNMENT AGREEMENT (this "Agreement"), dated as of the latest execution date below (the "Effective Date"), is entered into by **Anon-X, Inc.**, a Washington State Corporation, having an address at 18269 Hummingbird Drive, Penn Valley, CA 95946 (" Assignor") and **Knossos Global Systems LLC,** a limited liability company organized under the laws of Texas with a principal place of business at 5900 Balcones Drive Suite 100, Austin, TX 78731 ("Assignee"). Each may be individually referred to as a Party and collectively may be referred to as the Parties.

**WITNESSETH:**

**WHEREAS,** Assignor is the owner of all right, title, and interest in the patents and patent applications listed in Exhibit A (the "Assigned Patents"); and

**WHEREAS**, Assignor desires to assign and Assignee desires to acquire all of Assignors' right, title, and interest in the Assigned Patents, all subject to and in accordance with the terms set forth herein; and

**NOW, THEREFORE,** in consideration of good and valuable consideration set forth in this Agreement, the receipt and adequacy of which is hereby acknowledged, and intending to be bound, Assignor and Assignee hereby agree as follows:

**1. Assignment.**

**1.1.** Contemporaneous with the execution of this Agreement, Assignor shall execute and deliver to Assignee the form of patent assignment set forth in Exhibit B hereto (the "Patent Assignment"). Assignor shall further execute from time to time all other reasonable and appropriate documents, when prepared and submitted to Assignor by Assignee, which documents are necessary to effectuate fully the assignment described in Exhibit B hereof and to permit Assignee to be duly recorded as the owner of the Assigned Patents.

**2. Taxes.** All taxes imposed as a result of the existence of this Agreement or the performance hereunder shall be paid by the Party required to do so by applicable law.

**3. Consideration.**

**3.1** In return for the assignment herein, Assignor shall have the right to receive thirty-five percent (35%) percent of all Net Monetization Revenue related to the Assigned Patents. Net Monetization Revenue is defined as all revenue derived from licensing, settlements, and patent infringement assertion efforts related to the Assigned Patents, beginning on the Effective Date, less any legal fees and any costs advanced by Assignee. Legal fees and costs can include, but may not be limited to, the following: legal fees; maintenance fees; prosecution fees; filing fees and other court costs; local counsel fees; expert fees; witness fees; consulting and investigator fees; product reverse engineering fees; travel and lodging expenses of employees, lawyers, third party experts and consultants; deposition costs; court reporter charges; actual telephone, postage, facsimile, copying, messenger and delivery expenses; return of any files at the conclusion of representation; computerized legal research such as LEXIS and Westlaw; and/or any other out-of-

pocket expenses paid by Assignee to an unaffiliated third party. Notwithstanding the foregoing, Assignee shall under no circumstances have any right to receive any amounts from the Assignor under this Section 3.1. Wiring instructions for payment to Assignor are listed in Exhibit C herein.

**4. Representations and Warranties.**

**4.1.** Assignor represents and warrants, as of the Effective Date, to the best of Assignors' knowledge, the following:

**4.1.1.** that it is the sole owner of the Assigned Patents; and that it has the power, right and authority to enter into and perform its obligations under this Agreement; and

**4.1.2.** that it has taken all necessary action to authorize its execution, delivery and performance of this Agreement; and

**4.1.3** that this Agreement when duly executed will be a binding obligation of Assignors, enforceable in all respects against it.

**4.1.4** that as of the date of this agreement there are no overdue maintenance fees.

**4.2** Assignee represents and warrants, as of the Effective Date, the following:

4.2.1 that it has the power, right and authority to enter into and perform its obligations under this Agreement; and

4.2.2 that it has taken all necessary action to authorize its execution, delivery and performance of this Agreement; and

4.2.3 that this Agreement when duly executed will be a binding obligation of Assignee, enforceable in all respects against it; and

**5. Limitation of Liability** Each Party's total liability to the other for any and all claims arising hereunder, other than the payment obligations of Section 3, may not exceed $2,500.00. In no event shall either Party hereto be liable to the other for any indirect, special, incidental, or consequential loss or damages arising out of this Agreement or the rights granted hereby.

**6. Confidentiality.**

**6.1.** Each Party agrees to exercise all reasonable precaution (no less precaution than it takes to protect its own confidential information) to retain in confidence and not to disclose to any third party any Confidential Information submitted to it by the other Party hereunder on or prior to the Effective Date. For avoidance of doubt, the Parties shall not exchange any Confidential Information subsequent to the Effective Date absent a separate written agreement. The Parties

each acknowledge that disclosure of Confidential Information could result in irreparable injury to the business and goodwill of the other, and each agrees to notify the other immediately upon discovering any unauthorized disclosure of such other Party's Confidential Information.

**6.2.** "Confidential Information" shall mean any confidential, trade secret or proprietary information belonging to a Party, including but not limited to this Agreement and the Exhibits hereto, as well as business, strategic, financial, operating, planning or technical information of either Party, however embodied, and shall also mean any other information identified by either of the Parties to this Agreement as "confidential," but shall specifically exclude information which is at the time of disclosure, or thereafter becomes, a part of the public domain through no act or omission by the receiving Party.

**6.3.** Each Party may, however, disclose Confidential Information:

(i) to those of its employees, contractors, agents, and affiliates whom disclosure is necessary in order to effectuate the matters contemplated herein, subject to obligations of confidentiality at least as stringent as those contained herein; and

(ii) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, subject to obligations of confidentiality at least as stringent as those contained herein; and

(iii) to its accountants, legal counsel, tax advisors, and other financial and legal advisors, subject to obligations of confidentiality and/or privilege at least as stringent as those contained herein; and

(iv) in response to any subpoena, governmental mandate, regulation, discovery request, or court order, in connection with any litigation or administrative proceeding, or so as to comply with any applicable law, rule or regulation;

(v) to any opposing party in litigation in which a Protective Order has been entered, subject to the highest level of confidentiality available under the Protective Order; and

(vi) with the prior written consent of the other Party.

provided, however, that prior to any such disclosure pursuant to paragraph (iv) hereof, the Party seeking disclosure shall promptly notify the other Party and take reasonable actions to minimize the nature and extent of such disclosure, including designating such Confidential Information under the appropriate confidentiality provisions of any applicable protective order.

**7. <u>Miscellaneous</u>.**

**7.1.** Assignee shall bear sole responsibility for recording Assignee as the owner of the Assigned Patents under the laws of the United States. For the avoidance of doubt, the executed Patent Assignment in the form set forth in Exhibit B, and not this Agreement, shall be the document



PATENT
REEL: 070661 FRAME: 0382

to be recorded with the United States Patent Office, which document shall be recorded by Assignee within 60 days from the Effective Date.

**7.2.** Assignor and Assignee are independent contractors. Neither Assignor nor Assignee has any authority to bind the other Party by contract or otherwise to any obligation. Any Party concerned about a legal matter or issue, or the legal effect of any document, including, without limitation, this Agreement or the Patent Assignment, has consulted with their own legal counsel for advice or opinions on which they may rely.

**7.3.** This Agreement and questions related to its validity, interpretation, performance, and enforcement, as well as any other claims that may ever arise between the Assignee and Assignors, whether sounding in tort, contract, or equity, shall be governed and construed according to the laws of the State of Texas, without giving effect to choice of law principles of any state. Assignee and Assignor each submit to the exclusive jurisdiction of the state courts located in Dallas County, Texas and to the Federal courts located in the State of Texas as to all actions or proceedings relating in any way to this Agreement, the Patent Assignment, or on any other cause of action between them. Assignee and Assignor each further agree that such courts shall have person jurisdiction over each of them and are a proper venue and convenient forum with respect to all such actions or proceedings.

**7.4.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

**7.5.** The Parties hereto each acknowledge and agree that each would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that any breach of this Agreement by either of the Parties hereto could not adequately be compensated in all cases by monetary damages alone. Accordingly, in addition to any other right or remedy to which the Parties hereto may be entitled, at law or in equity, each shall be entitled to enforce any provision of this Agreement by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of any of the provisions of this Agreement, without posting any bond or other undertaking.

**7.6.** As of the Effective Date, for avoidance of doubt, as between Assignor and Assignee, the (i) prosecution, (ii) maintenance, (iii) litigation or other enforcement of the Assigned Patents, (iv) granting to third parties of licenses or releases under the Assigned Patents, and (v) any sale, assignment, or other transfer of the Assigned Patents (as well as the decision not to pursue any of the foregoing activities), shall be within the sole discretion and control of Assignee.

**7.7.** If any provision of this Agreement or the application thereof to any person or circumstance is held by a court of competent jurisdiction to be illegal, invalid or unenforceable to any extent, that provision shall be limited or eliminated to the minimum extent necessary so that the remainder of this Agreement and the application thereof shall otherwise remain in full force and effect.

**7.8.** The failure of any Party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

**7.9.** The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any Party shall not preclude or waive the right to use any or all other remedies. Such rights and remedies are given in addition to any other rights the Parties may have by law, statute, ordinance or otherwise.

**7.10.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of any Party hereto. Except and only to the extent provided by applicable statute, no such creditor shall have any rights under this Agreement.

**7.11.** This Agreement shall be binding upon, and shall inure to the exclusive benefit of, the Parties hereto, their respective permitted successors and assigns.

**7.12.** The Assignor further agree that they will not, directly or indirectly, attempt in any way to invalidate any of the Assigned Patents, or attempt in any way to render unenforceable any of the Assigned Patents. This section shall not prohibit any person or party from providing truthful testimony in response to a lawful subpoena or other valid legal process.

**7.13.** Any modification of this Agreement shall be effective only if in a writing executed by both Parties.

**7.14** Failure by Assignee to initiate litigation regarding monetization of the Assigned Patents within 120 days of the date of this Agreement shall constitute a Breach under this Agreement. Assignee shall have 60 days after being notified by Assignor of a Breach to cure such Breach. If Assignee does not cure the Breach within 60 days of any such notice, Assignee shall assign the Assigned Patents back to Assignor at no costs to Assignor.

**7.15** Assignee shall send written reports to Assignor or its designated representative within fifteen (15) days of any signed agreement related to Net Monetization Revenue and will respond to email requests for status on a quarterly basis.

**IN WITNESS WHEREOF,** Assignor and Assignee have caused this Agreement to be duly executed as of the day and year first above written.

**Anon-X, Inc.** ("Assignor")
By: George Sidman
Title: CEO
Date: March 18, 2025

**Knossos Global Systems LLC** ("Assignee")
By: Jeffrey M. Gross
Title: Managing Member
Date: Mar. 21, 2025

# EXHIBIT A

## Patents:

8,266,421
8,819,410

**EXHIBIT B**

**U.S. PATENT ASSIGNMENT**

WHEREAS, **Anon-X, Inc.**, ("Assignor"), is the owner of (i) United States Patent and Patent Applications listed in Schedule A and the following (ii) through (iv) to the extent Assignor owns, controls or has the right to license or enforce them at any time: (ii) any patents or patent applications that claim priority directly or indirectly from any of the foregoing patent(s) in subsection (i), or from which priority is directly or indirectly claimed by any such patent(s) in subsection (i), or that have common priority with any such patent(s) in subsection (i); (iii) any foreign counterparts, foreign related patents, continuations, divisionals, continuations-in-part, extensions, substitutions, reissues, renewals and all results of oppositions, reexaminations, supplemental examinations, requests for continued examination and other review procedures of any of the foregoing in subsections (i) and (ii); and (iv) all patents issuing on patent applications covered by any of the foregoing subsections (i) through (iii) (together the "Assigned Patents").

WHEREAS, Knossos Global Systems LLC, a Texas limited liability company ("Assignee") is desirous of acquiring title in and to the Assigned Patents.

WHEREAS, Assignor is the owner of any and all right, title, and interest in and to the Assigned Patents.

WHEREAS, Assignor desires to sell, assign, and transfer all its right, title, and interest in the Assigned Patents to Assignee, and Assignee desires to obtain all such right, title, and interest in the Assigned Patents from Assignors.

NOW, THEREFORE, in consideration of good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor hereby sells, assigns, transfers and conveys unto Assignee, its permitted successors and assigns, all of Assignors' right, title, and interest in and to the Assigned Patents, together with all claims, demands, or causes of action that Assignor has or might have by reason of any infringement of the Assigned Patents prior to the effective date of this assignment, including the right to sue and collect damages for all past, present and future infringement and all lost profits resulting there from.

IN WITNESS WHEREOF, this Agreement has been executed by a duly authorized representative of Assignor on the date below.

Signature
Name: George Sidman
Title: CEO

# SCHEDULE A

## Patents:

8,266,421
8,819,410

# EXHIBIT C

## PAYMENT INSTRUCTIONS

**Assignor**

| | |
|---|---|
| Bank Name: | Tri Counties Bank |
| Bank Address: | 709 Sutton Way, Grass Valley, CA 96945 |
| Account Name: | TrustWrx, Inc. |
| ABA/Routing#: | 121135045 |
| Account Number: | [redacted] |
| Account Holder Address: | 18269 Hummingbird Drive, Penn Valley, CA 95946 |
| Account Holder Phone #: | 831 601-1776 |
| Email: | sidman@anon-x.com |